## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **PATRICIA LYNN GILLEY,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action File No.** |
| | : | |
| **v.** | : | |
| | : | |
| **NUANCE COMMUNICATIONS, INC.,** | : | **JURY TRIAL DEMAND** |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## COMPLAINT

**COMES NOW** Plaintiff, Patricia Lynn Gilley ("Plaintiff"), by and through counsel undersigned, and hereby submits her Complaint against Nuance Communications, Inc. ("Defendant" or "Nuance"), and shows the Court, as follows:

## Cause of Action

### 1.

This cause of action arises under the provisions of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), seeking a

remedy for sex discrimination and retaliation, and, the Age Discrimination and Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"), seeking a remedy for age discrimination and retaliation, all of which occurred while Plaintiff was employed by Defendant.

## **Parties, Jurisdiction and Venue**

### **2.**

At all times relevant to this action, Plaintiff was a resident of the State of Georgia and of the Northern District of Georgia.

### **3.**

Defendant is a foreign profit corporation, doing business in the State of Georgia.  Defendant's principal office address is One Wayside Road, Burlington, Massachusetts 01803.  This Defendant may be served, via its registered agent for service of process, CT Corporation System, 1201 Peachtree Street, NE, Atlanta, Georgia 30361.

### **4.**

The jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1337.

**5.**

Pursuant to 28 U.S.C. § 1391, venue is appropriate in this judicial district as the Defendant conducts business and maintains a registered agent within the Northern District of Georgia.

## FACTUAL ALLEGATIONS

**6.**

Plaintiff was employed by Defendant for approximately three and one-half (3 ½) years.  At the time of separation, Plaintiff's title was Senior Director, Human Resources, Nuance Transcription Services ("NTS").

**7.**

Plaintiff's immediate supervisor was Eric Tinch ("Tinch"), Vice President, NTS.

**8.**

On or about June 27, 2017, Nuance experienced a global malware attack which infected portions of its software network.

**9.**

Therefore, as a precautionary measure, Nuance took certain corporate and support tools offline, including email and support portals, to prevent the potential for further malware intrusion.

**10.**

With email and internal support portals disrupted, the ability to communicate with employees, and others, was seriously impaired.

**11.**

Combined with the upheaval created by the malware attack and the accompanying problems, employees and management were scrambling to create order amidst the chaos and uncertainty of the situation.

**12.**

As a result of the malware attack, Nuance devised an alternate compensation provision designed to incentivize its employees to work additional hours so that NTS might continue to properly service its customers, despite the malware infection that had obstructed its productivity and abilities.

**13.**

On June 29, 2017, at 8:03 a.m., Plaintiff composed an email to Brenda Drake, Operations Director; Kristine Meier, Operations Director; Christoph Franiczek, Project Manager; Heather Steinfeld, Director of Project Management; and, Gabriela Pereyra, Director of Quality and Training, attaching a proposed information sheet to NTS employees, which included directives from upper management, and was drafted by Plaintiff and Tinch.

**14.**

The information sheet discussed the malware attack, indicated next steps to continue providing transcription services to Nuance's clients, and, included an initial, general statement regarding pay, pay incentives, and how employees could communicate with their managers.

**15.**

Subsequently, changes were made to the information sheet and approved for roll-out by the Senior Operations Management team and Tinch.  On June 29, 2017, at 4:06 p.m., Plaintiff sent an email, signed by Tinch and herself, to the personal email addresses of the NTS Operations Management Group, with the approved information sheet attached.

**16.**

Thereafter, a myriad of email messages and other communications to and from multiple individuals were exchanged regarding pay, pay incentives, and incentive pay recipients.

**17.**

After receiving explicit instructions from NTS Operations management, specifically, Kristine Meier, as to details of the alternate compensation provision and prior to actually sending proposed communications to employees regarding the

alternate compensation provision, Plaintiff included Meier, Drake and Tinch in her drafts of proposed communications, based on instructions provided by them. Neither Tinch nor anyone else offered any comments, corrections or revisions in regard to the addressees, i.e., "Nuance Transcription Services Employees" of the information sheets discussing the alternate compensation provision

**18.**

Although the alternate compensation provision was reviewed, revised and approved over and over again, confusion still abounded amongst management, employees, and the Human Resources Department, even into late July and August 2017, regarding how employees were to be compensated, and which employees were eligible for the alternate compensation provision.

**19.**

Eventually, hours worked via the alternate compensation provision started being submitted to the Payroll Department.   That is when NTS Operations Management realized that, the only group of employees that should have been included in the offer of the alternate compensation provision was a select, very small group of employees in a Florida hospital.

**20.**

Instead, approximately 2,500 Nuance employees had access to, and many took advantage of, the offer of the alternate compensation provision.

**21.**

The cost to Nuance of the alternate compensation provision was significant, over $1.2 million dollars.

**22.**

Throughout this entire process, Plaintiff was charged with transmitting email communications and messages via the Employee Learning Portal regarding the alternate compensation provision to the recipients,  and yet, Plaintiff was not included in any discussions regarding the original design of the alternate compensation provision and, was often not included in the subsequent related discussions, whether verbal or written.

**23.**

Nevertheless, it was decided by those in authority that Plaintiff, the 68-year-old female, and the oldest employee of all employees involved, would be the chief scapegoat.  Not Plaintiff's younger, male supervisor, nor any of the multiple women and men involved in the post-malware attack process, all of whom were

younger than Plaintiff.  Plaintiff's boss, Tinch, received a bonus reduction, but he was not terminated.

**24.**

Thus, in September of 2017, Plaintiff was informed by Sachin Sahney ("Sahney"), the Human Resources Leader for the Health Care Division of Nuance, that she would resign and that her last day of employment with Nuance would be December 31, 2017.  Sahney did not provide Plaintiff with a reason for her forced resignation, but instead stated that it would be best if Plaintiff's parting was a "mutual decision."  In other words, Plaintiff was terminated but, younger and  male workers were not so terminated.

**25.**

Throughout her tenure at Nuance, Plaintiff exercised diligence and careful consideration in the performance of her duties and handled her responsibilities with efficiency and competence.  She never received a bad performance review nor was she ever written up for any reason.

**26.**

Plaintiff had done nothing wrong in regard to the alternate compensation provision, or in any other area or circumstance pertaining to her position at Nuance.  In fact, Plaintiff's only appreciable fault was apparently that of being a

68-year-old female in Defendant's workplace, which was dominated by employees younger than Plaintiff.

**27.**

When Plaintiff was informed by Sahney that in addition to being forced to resign, she also would not receive an earned, expected, and deserved, performance bonus, Plaintiff asked Sahney why she would not receive her performance bonus. Sahney then responded "[d]o you really believe that you had no responsibility for the $1.2 million dollars of incentives liability?"

**28.**

Plaintiff vehemently replied that she absolutely did not have responsibility for that liability.  Sahney then stated that Plaintiff "should not get upset" and ended the conversation.

**29.**

Nuance seized on the only theory it could possibly construct against Plaintiff by taking the absurd position that only Plaintiff was responsible for the alternate compensation provision being offered to 2,500 employees instead of to only a small, select group.

## COUNT I
### (Sex Discrimination and Retaliation - Title VII)

**30.**

Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in the preceding Paragraphs.

**31.**

Defendant's treatment of Plaintiff was motivated by and because of Plaintiff's sex, which amounts to employment discrimination.

**32.**

Defendant discriminated and then retaliated against Plaintiff because of her sex when it singled her out for termination and denial of her earned, and deserved, performance bonus.

**33.**

Plaintiff's immediate supervisor was Eric Tinch, a male employee, who oversaw Plaintiff's work and actions. Despite this fact, Defendant chose to condemn only Plaintiff, a female, and lay the fault for the alternate compensation fiasco that followed the malware attack at Plaintiff's feet.

**34.**

Further, every Nuance employee involved in the email communications regarding the alternate compensation provision, including Tinch, read over and

over again to whom the provision was being offered.  Yet, Plaintiff, not Tinch, was singled out for termination and denial of her earned, and deserved, performance bonus.

### 35.

Defendant discriminated and retaliated against Plaintiff on the basis of her sex in violation of Title VII.

### 36.

All jurisdictional prerequisites to the institution of Plaintiff's suit under Title VII have been fulfilled.  Plaintiff filed her charge within 180 days of the discriminatory acts; Plaintiff was issued a right to sue from the EEOC; and Plaintiff now files this Complaint within 90 days of receipt of the right to sue. Plaintiff's Charge of Discrimination is attached as **Exhibit A**.

### 37.

The above described sex discrimination and retaliation placed stress and humiliation on Plaintiff not endured by her male coworkers.

### 38.

At the time of the discriminatory acts alleged, Defendant knew or should have known that the means utilized to discriminate against Plaintiff were discriminatory and forbidden by law.

**39.**

Defendant performed the above described discriminatory and retaliatory actions willfully, wantonly, intentionally, and in reckless and callous disregard of Plaintiff's federally protected rights.

## COUNT II
### (Age Discrimination and Retaliation - ADEA)

**40.**

Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in the preceding Paragraphs.

**41.**

Defendant discriminated and retaliated against Plaintiff because she is an older worker.

**42.**

Plaintiff bore no more responsibility for any actual or alleged errors or wrongdoings in regard to the post-malware fiasco, than did Tinch, or every other Nuance employee involved, all of whom were younger than Plaintiff.

**43.**

Plaintiff's immediate supervisor was Eric Tinch, who was younger than Plaintiff.  Tinch oversaw Plaintiff's work and actions.  Despite this fact, Defendant

chose to condemn only Plaintiff, an older worker, and lay the fault for the alternate compensation fiasco that followed the malware attack at Plaintiff's feet.

**44.**

Further, every Nuance employee involved in the email communications regarding the alternate compensation provision, including Tinch, read over and over again, to whom the provision was being offered.  Yet, Plaintiff, not Tinch, or any of the other younger employees involved, was singled out for termination and denial of her earned, and deserved, performance bonus.

**45.**

Defendant discriminated and retaliated against Plaintiff on the basis of her age in violation of the ADEA.

**46.**

All jurisdictional prerequisites to the institution of Plaintiff's suit under the ADEA have been fulfilled.  Plaintiff filed her charge within 180 days of the discriminatory acts; Plaintiff was issued a right to sue from the EEOC; and Plaintiff now files this Complaint within 90 days of receipt of the right to sue. Plaintiff's Charge of Discrimination is attached as **Exhibit A**.

**47.**

The above described age discrimination and retaliation placed stress and humiliation on Plaintiff not endured by her younger coworkers.

**48.**

At the time of the discriminatory acts alleged, Defendant knew or should have known that the means utilized to discriminate against Plaintiff were discriminatory and forbidden by law.

**49.**

Defendant performed the above described discriminatory and retaliatory actions willfully, wantonly, intentionally, and in reckless and callous disregard of Plaintiff's federally protected rights.

**WHEREFORE**, Plaintiff respectfully prays for judgment against the Defendant, as follows:

(a)    That Defendant be ordered to formulate, distribute and implement a written policy which does not discriminate in any manner which is a violation of Title VII or the ADEA;

(b)    That Defendant be ordered to compensate, reimburse, and make whole the Plaintiff for all the benefits, if any, she would have received had it not been for Defendant's illegal actions, including but not

limited to pay, benefits, insurance costs, <u>bonuses</u>, raises, training, promotions, and seniority;

(c)     That Plaintiff recover liquidated damages for Defendant's willful violations of the ADEA;

(d)     That Plaintiff recover compensatory damages for Defendant's willful violations of Title VII;

(e)     The Plaintiff be awarded punitive damages to punish the Defendant for its unlawful actions and violations of Title VII;

(f)     That Plaintiff recover costs and expenses of litigation including an award of reasonable attorney's fees;

(g)     That Plaintiff recover prejudgment interest;

(h)     That the Court issue a declaratory judgment that the practices complained of are unlawful and void; and

(i)     For such other and further relief as the Court deems just and proper.

## **<u>Jury Demand</u>**

Plaintiff hereby demands a trial by jury of all issues in this action.

Dated this 23rd day of April 2018.

**PANKEY & HORLOCK, LLC**

By:  _/s/ Larry A. Pankey_____
Larry A. Pankey
Georgia Bar No. 560725
***Attorneys for Plaintiff***

1441 Dunwoody Village Parkway
Suite 200
Atlanta, Georgia 30338
Telephone:  770-670-6250
Facsimile:   770-670-6249
LPankey@PankeyHorlock.com

## <u>CERTIFICATION OF FONT SIZE</u>

Pursuant to Local rule 5.1C of the Local Rules of the United States District Court for the Northern District of Georgia, I, Larry A. Pankey, Esq., of Pankey & Horlock, LLC, attorney for Plaintiff, Patricia Lynn Gilley, hereby certify that the foregoing **Complaint** is typewritten in MS Word using Times New Roman font, fourteen (14) point type.

Dated this 23rd day of April 2018.

**PANKEY & HORLOCK, LLC**


By:   */s/ Larry A. Pankey*
        Larry A. Pankey
        Georgia Bar No. 560725
        ***Attorneys for Plaintiff***